### OFFICERS OF A VILLAGE ADVANCED TO A CITY.

Circuit Court of Summit County.

PETER O. WISE, A TAX-PAYER, ON BEHALF OF THE CITY OF
BARBERTON, v. CITY OF BARBERTON ET AL.

Decided, May, 1912.

*Municipal Corporations—Advancement of Village to City—Mayor's Veto
Power—Compensation of Councilmen.*

1. Upon advancement of a village to a city as provided by law, village
officers become city officers and the mayor, in such case, has the
power of veto.

2. Where there is no valid ordinance fixing the compensation of council-
men, upon the induction into office of the first council elected after
the advancement of a village to a city, such council can fix the
compensation of its own members.

*O. D. Everhard* and *S. D. Kanfield,* for plaintiff.

*Rogers, Rowley & Mathers* and *N. E. Boden,* City Solicitor,
contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

In this case an order is prayed for to restrain the city of Bar-
berton from paying, and its several officials from receiving, cer-
tain salaries attempted to be provided for them by an ordinance
passed by the council of the city of Barberton on the third day
of January, 1912, said officers having been elected and their
terms having begun previous to the passage of said ordinance.

The case grows out of a situation developed by Barberton's
increase in population.

Barberton was a village until the census was taken in 1910;
by that census it was developed that Barberton had a population
of more than five thousand; that fact was later officially made
known to the Secretary of State of the state of Ohio, and, on the
18th day of January, 1911, the Secretary of State issued a proc-
lamation stating that fact. Thirty days later, to-wit, on Febru-
ary 17, 1911, Barberton became a city, by virtue of the last

paragraph or sentence of Section 3498 of the General Code, which reads as follows:

"From and after thirty days after the issuance of such proclamation, each municipal corporation shall be a city or village, in accordance with the provisions of this title."

The "title" thus referred to is Title XII, "Municipal Corporations," which embodies the whole law upon the subject of municipal corporations, and is commonly called the municipal code. The only section of said code having reference to the transition of a village to a city is Section 3499. It reads as follows:

"Sec. 3499. Officers of a village advanced to a city, or of a city reduced to a village, shall continue in office until succeeded by the proper officers of the new corporation at the next regular election, and the ordinances thereof not inconsistent with the laws relating to the new corporation, shall continue in force until changed or repealed."

This meager legislation on the subject produces difficulties and inconsistencies which can not be escaped.

Barberton became a city in February, 1911; its officers, originally elected as village officers, continued in office until January, 1912; from February, 1911, to January, 1912, were they village officers or city officers, and were their powers and duties prescribed by the statutes governing village officers or by the statutes governing city officers? The powers and duties of village and city officers are quite different.

Since the statutes themselves do not answer the question the court is required to answer it in a manner which will produce the least confusion, and as seems most conducive to good government.

In examining the question here involved, the facts of this case alone have been considered, and it has not been deemed necessary to lay down any general rules governing all questions which might arise under the sections quoted.

The only things that are made absolutely certain by these two sections are that Barberton was a city, from and after February 17, 1911, and the only officers it had until January, 1912,

were the individuals who originally had been elected as village officers.   December 11, 1911, the council of the city of Barberton, composed of the individuals who had been elected as members of the council of the village of Barberton, passed an ordinance fixing the salaries of the city officials recently elected, who would come into office the following January.

This they had a right to do, but the mayor vetoed it, and said ordinance was never passed over his veto.

Did he have a right to veto this ordinance?   If he did not it is still in force and the prayer of the petition should be granted. If the mayor had a right to veto the ordinance of December 11, 1911, a second question arises:   Did the new council on January 3, 1912, have a right to fix the salaries of city officials whose terms began before said date?

The mayor of a city can veto an ordinance; the mayor of a village can not.

Though the learned Attorney-General of the state has given it as his opinion that in a situation like this the mayor would not be vested with the veto power, he does not sustain his opinion with argument, and we see no good reasons why the mayor should not have and exercise the powers of a mayor of a city.   Was Barberton a city in name only, until January, 1912, or was it a city in fact?   That it was a city in fact is to be deduced from language used in Section 3499—"the ordinances thereof (of the village) not inconsistent with the laws relating to the new corporation, shall continue in force until changed or repealed."

What is meant by the expression "laws relating to the new corporation"?   It means that part of the municipal code which lays down the rules governing cities, if the new corporation is a city, as in this case.

The laws governing cities, then, apply here, and we hold that the law vesting the veto power in the mayor of a city applies and the mayor had a right to veto the ordinance of December 11, 1911, and it never went into effect, because it was not passed over his veto.

The argument *ab inconveientum* of counsel for plaintiff, has not impressed us.   We see no difficulty in the village mayor

giving up his place as president of the council and turning it over to the president *pro tempore,* the latter being a village officer capable of acting as president of the city council, thus relieving the mayor of any equivocal situation, growing out of his former power of deciding tie votes in the council, and also exercising his new veto power.

Now what was the situation which confronted the new officers after their terms began?

There were several new officers; a city solicior, directors of public safety and public service, and a city auditor; the village had never had such officers.

The mayor of a village receives a small salary and fees in state and municipal cases and certain license fees; the mayor of a city can not receive fees in state cases. The old salary ordinance of the village of Barberton provided for the mayor's compensation in accordance with the law regulating villages; the mayor of a city can not receive such compensation as was provided by said ordinance; said ordinance also failed to provide for the new city officers, hence said old village ordinance is "inconsistent with the laws relating to the new corporation," and therefore it did not continue in force. (Section 3499.)

We now have the new city officers entering their terms with no salaries fixed for their compensation.

The new city council proceeded to fix their salaries on January 3, 1912, and it is the salaries thus fixed that plaintiff claims should not be paid.

He says that said ordinance contravenes Section 4213, General Code, which reads:

"The salary of any officer, clerk or employee shall not be increased or diminished during the term for which he was elected or appointed, and, except as otherwise provided in this title, all fees pertaining to any office shall be paid into the city treasury."

This statute applies only to a case where a salary has been fixed and not where no salary has been provided.

In order to increase or decrease a salary, there must be something to increase or decrease. The Legislature can not have

intended that salaries might not be provided where none had been provided before, for then there would be no way of compensating officers of newly created municipal corporations, and there would be difficulty in finding persons to fill such offices and perform the duties thereof.

This is the conclusion reached by Judge Evans, of the Franklin County Common Pleas Court, in a well-reasoned opinion citing authorities which abundantly sustain his views: *State, ex rel,* v. *Carlisle,* 3 N.P.(N.S.), 544.

That case was never carried higher, and we concur in the views there expressed.

The ordinance of January 3, 1912, fixed the compensation of councilmen at the same figure it had been under the village government, so that there is no question here of public policy forbidding a man fixing his own compensation, or acting as judge in his own case, as was suggested on the argument.

Nor have we here any part of the salaries to enjoin, under the Crosser act, for the ordinance was passed as an emergency measure, and we hold that it was such.   Surely an emergency existed; *no* salaries had been provided for the city officials, and they might all refuse to act and the city government be crippled and paralyzed.   This is a different situation from one involving an increase in salaries.

The petition is dismissed.